UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**JESSIE KEITHCART**,                                      Civil Case No. 3:11-799-KI

            Plaintiff,                              OPINION AND ORDER

    v.

**COMMISSIONER OF SOCIAL
SECURITY**,

                Defendant.

Tim Wilborn
Wilborn Law Office, P.C.
P.O. Box 2768
Oregon City, OR 97045

        Attorney for Plaintiff

S. Amanda Marshall
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney

Page 1 - OPINION AND ORDER

1000 SW Third Ave., Suite 600
Portland, OR 97204-2902

David Morado
Regional Chief Counsel, Region X, Seattle
Scott T. Morris
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
1301 Young Street, Suite A-702
Dallas, TX 75202

       Attorneys for Defendant


KING, Judge:

       Plaintiff Jessie Keithcart brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## BACKGROUND

       Keithcart filed applications for SSI and DIB on March 27, 2007.  The applications were

denied initially and upon reconsideration.  After a timely request for a hearing, Keithcart,

represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on

June 29, 2010.

       On July 8, 2010, the ALJ issued a decision finding that Keithcart was disabled for a

closed period beginning April 4, 2006 and ending February 24, 2010.  The ALJ concluded

Keithcart was not disabled after February 24, 2010 within the meaning of the Act and therefore

Page 2 - OPINION AND ORDER

not entitled to ongoing benefits.  This decision became the final decision of the Commissioner

when the Appeals Council declined to review the decision of the ALJ on September 28, 2010.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is

carried out by the ALJ.  The claimant has the burden of proof on the first four steps.  Parra v.

Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§

404.1520 and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial

gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.

Page 3 - OPINION AND ORDER

Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he Commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision."  Batson v. Comm'r of Soc. Sec.

Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ concluded Keithcart suffered from the severe impairments of degenerative

arthritis of the first metacarpal joints of the right hand and major depressive disorder as of June

15, 2005, and spondylosis as of April 4, 2006.  Beginning February 25, 2010, the ALJ found

Keithcart suffered from the degenerative arthritis and spondylosis, but no longer suffered from

depression.  The ALJ also found that these impairments, either singly or in combination, did not

meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404,

Subpart P, Appendix 1.

The ALJ concluded Keithcart had the capacity to perform light work, along with a few

other functional limitations, before April 4, 2006.

From April 4, 2006 through February 24, 2010, the ALJ concluded Keithcart was limited

to sedentary work, as follows:

> [L]imited to occasional climbing, stooping, crouching and crawling, and frequent
> balancing and kneeling.  She was limited to occasional overhead reaching and
> occasional handling and fingering bilaterally.  She needed to avoid even moderate

exposure to vibration and avoid concentrated exposure to hazards. She was
limited to simple, routine tasks in a routine work environment.

Tr. 25. The ALJ came to this conclusion based on an April 4, 2006 MRI of the cervical spine

showing advanced cervical spondylosis, most severe at C5-6 and C6-7. Keithcart underwent a

C5-6 and C6-7 diskectomy and interbody fusion on March 30, 2009. The ALJ relied on the

testimony of a vocational expert ("VE") who testified Keithcart could not have performed her

past work and that there were no jobs in significant numbers in the national economy that she

could have performed during that time.

The ALJ found Keithcart's mental and physical condition had improved as of February

25, 2010. As a result, the ALJ opined Keithcart had the residual functional capacity to perform

light work again, with the following additional limitations:

> [S]he is limited to occasional climbing, stooping, crouching and crawling. She is
> able to frequently balance and kneel. She is limited to occasional overhead
> reaching and occasional handling and fingering bilaterally. She should avoid even
> moderate exposure to vibration and should avoid concentrated exposure to
> hazards.

Tr. 29. She was no longer limited to simple, routine tasks in a routine work environment. Based

on the testimony of a VE, the ALJ concluded Keithcart could perform work as a photo finishing

sales clerk or interviewer.

## FACTS

Keithcart, who was almost 48 years old at the time of the hearing, did not complete high

school and does not have a GED. She last worked as a lunch lady/janitor in 2005, but before that

she had worked as a dump truck driver, a grocery store auditor, and in a bakery. She testified

that her last job ended mutually; she was experiencing pain and her employer felt she was not keeping up with the pace of the job.

Keithcart began receiving mental health treatment from Lifeworks Northwest in December 2007. She was treated for depression and anxiety. On February 25, 2010, PMHNP Becki Kramer reported Keithcart had moved to a new place and that she was "busier in my own home," unpacking and walking her dog. Tr. 1070. Keithcart "contemplated stopping antidepressants but I pointed out she only recently became stable on the medications, and it is time to simply enjoy that. I do not recommend medication discontinuation. She appears to be doing much better, and this is very much state dependent, and supported by proper medication." Id.

Keithcart's primary care physician, Sunita Deshmukh, M.D., began treating Keithcart in February 2008 for Keithcart's neck, back, and bilateral hip pain, as well as arthritis in her hands and feet. Tests for inflammatory arthritis, synovitis, and rheumatoid arthritis were negative.

A CT myelogram showed moderate spondylosis of L4-5 with a 4 mm left paracentral bulge and associated deflection of the traversing left L5 nerve root in May 2008. Additionally, at C5-6, Keithcart showed moderate central canal stenosis and mild right-sided cord effacement. She began physical therapy without much relief. An MRI in February 2009 showed no improvement. Keithcart underwent a discectomy, decompression, bony fusion, and plating surgery on her cervical spine at the end of March 2009. She reported feeling like a weight had been lifted from her head, but she still felt pain in her shoulders and arms. She underwent physical therapy for her neck again on June 5, 2009.

Keithcart complained to Dr. Deshmukh about pain in her left knee on February 10, 2010. Dr. Deshmukh noted puffiness in the suprapatellar region and patellar crepitus in the left knee, with mild joint line tenderness. Keithcart reported having recently moved and that walking up stairs had aggravated her knee pain. Tr. 1107. She began physical therapy for the left knee pain. She could climb 4 or 5 steps by March 17, 2010.

Keithcart got in a car accident on March 25, 2010 and was treated in the ER for neck and arm pain. She saw Dr. Deshmukh for the pain on March 29. She had a negative urinary analysis for prescribed pain medications on April 28–she had not taken her medication for two days prior to the drug screen. Dr. Deshmukh reported Keithcart generally was compliant with her medications, and a follow up test on April 28 was positive for prescription medications.

On June 29, 2010, Dr. Deshmukh completed an assessment of Keithcart's functionality.

At the time of the hearing, Keithcart was seeing Dr. Deshmukh once a month and a mental health counselor once a month. She testified she had surgery in March 2009 on her neck, and that her condition improved somewhat but that she still had pain in her shoulders and lower back. She testified that she walked a block a day and once a week she walked five blocks. She got drowsy after taking her medication.

## DISCUSSION

Keithcart challenges the ALJ's opinion on three grounds: her treatment of Dr. Deshmukh's opinion, her analysis of Keithcart's credibility, and her treatment of lay witness testimony.

I.    <u>Medical Evidence</u>

Keithcart relies heavily on Dr. Deshmukh's June 29, 2010 functional assessment.  In that

assessment, Dr. Deshmukh believed Keithcart would be capable of performing sedentary work,

but would need the opportunity to stand and sit during the day.  Dr. Deshmukh found Keithcart

had moderate limitations in her ability to maintain attention and concentration for extended

periods, perform activities within a schedule, maintain regular attendance, be punctual within

customary tolerances, complete a normal workday and work week without interruptions from

medically-based symptoms, and perform at a consistent pace without an unreasonable number

and length of rest periods.  She noted Keithcart's "history of chronic degenerative osteoarthritis,

degenerative disc disease in the neck & lower back with intermittent radiculopathy that limits her

functional ability."  Tr. 1150.

The ALJ concluded, however, that Keithcart could perform light work.  She considered

Dr. Deshmukh's functional assessment, but gave it little weight because it was not consistent

with the treatment record.  Dr. Deshmukh did not comment on Keithcart's concentration or other

mental symptoms in her treatment records.  In contrast, Keithcart's counselor noted she was

active and socializing with clear and direct thought processes, normal speech, and normal insight,

judgment, and cognition.  Further, Dr. Deshmukh's records indicated Keithcart could function at

a higher level than sedentary work.  Laboratory studies were normal and x-rays showed only mild

spondylosis with stable fusion.  Keithcart reported her symptoms improved after post-surgical

physical therapy and, with the exception of physical therapy following Keithcart's accident, she

had not required care for her physical problems other than her prescription medications.  On that

note, the ALJ reported a negative drug screen for prescribed medications, despite Keithcart's

testimony that she took her pain medication several times a day.  Keithcart also enjoyed a busier daily schedule than she testified to; she told her therapist she was busy in her new home, unpacking boxes, caring for a new cat, exercising her dog, cooking daily, and doing a lot of walking.  Instead, the ALJ gave significant weight to the State agency consultant, who opined Keithcart could perform light work.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066.

The Commissioner suggests the ALJ did not "reject" Dr. Deshmukh's opinion; after all, even the doctor believed Keithcart could work albeit at a sedentary level.  The problem with this argument, however, as Keithcart points out, is that the VE could not identify any jobs at the sedentary level that Keithcart could perform with her fingering limitations.  As a result, if the ALJ were to credit Dr. Deshmukh's opinion, she would have to conclude Keithcart could not perform any work in the national economy contrary to the Commissioner's suggestion.

Additionally, the ALJ erred in relying on the State agency consultant's opinion, since that opinion was completed in January 2009 and does not address the time at issue here. Indeed, the ALJ found Keithcart disabled during the time covered by the State agency opinion.

Nevertheless, I agree with the Commissioner that the ALJ did not err in rejecting Dr. Deshmukh's opinion. The ALJ provided clear and convincing reasons for rejecting the limitations identified by Dr. Deshmukh.

As the ALJ noted, nothing in Dr. Deshmukh's treatment records identified any concentration problems. Keithcart suggests Dr. Deshmukh may have believed the concentration problems would be due to the medications, but the doctor does not state that. There is no support in the treatment record for any concentration limitations during the relevant period; Keithcart's counselor described her insight, judgment and cognition as within normal limits, eye contact and speech within normal limits, and that she had clear and direct thoughts. The ALJ made no error in rejecting this portion of Dr. Deshmukh's opinion.

Additionally, the fact that a drug screen on April 23, 2010 showed no sign of opiates is indicative of Keithcart's level of pain. Although it is true Dr. Deshmukh commented Keithcart was normally compliant with her medications, and a follow-up screening on April 28 showed she was taking her pain medications as required, it is at least notable that Keithcart had not taken her medications for two days prior to the urine drug screen. It is particularly revealing given that Keithcart had been seen in the office less than a month before after her ER visit for the car accident. At that time, she reported taking her normal pain medications to treat the neck and shoulder stiffness and pain, and her left elbow pain. After seeing the test results, Dr. Deshmukh

warned Keithcart that "if she does not take her pain medications, will need to cut it down." Tr.

1094. The ALJ did not err in considering the test as a factor in her analysis.

Furthermore, as the ALJ noted, Keithcart's activities reflected a higher level of exertion

than sedentary level. The ALJ pointed to a treatment record from February 10, 2010 reflecting

Keithcart's ability to walk a lot. It is true that Keithcart went to physical therapy on February 22,

2010 complaining of knee pain, possibly from moving and walking a lot, but less than a month

later, on March 17, she had met her goal of walking up four or five steps without left knee pain.

At that time, she reported the pain and swelling had decreased and she was exercising at home.

Tr. 1014-22.

Finally, as the ALJ commented, Keithcart's physical condition improved after her

surgery. Kim Wayson, M.D., of St. Vincent Office–Microneurosurgical Consultants, PC,

reported to Dr. Deshmukh, after having spoken with Keithcart, that "[s]he is actually doing

better. She has just gotten started in some therapy. She continues to have some neck pain. She

is increasingly active and tolerating it well." Tr. 995.

In sum, the ALJ gave clear and convincing reasons for finding Dr. Deshmukh's opinion

limiting Keithcart to sedentary work as not supported by the treatment records. See Batson, 359

F.3d at 1195 (an ALJ is not required to accept the opinion of a physician, even a treating

physician, if the opinion is "brief, conclusory, and inadequately supported by clinical findings").

II.    Keithcart's Credibility

The ALJ found Keithcart credible as to her symptoms during the closed period of

disability, but, for many of the same reasons set forth above, found her statements concerning the

intensity, persistence and limiting effects of her symptoms not credible beginning on February 25, 2010.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. Id. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. Id. "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

For the reasons I set forth above, the ALJ properly referenced the negative drug test, Dr. Wayson's note about Keithcart being increasingly active and tolerating the neck pain well, and the amount of walking Keithcart was doing. Again, although the walking resulted in some knee pain, it had resolved within a month of undergoing physical therapy. Keithcart's medical records reflecting increasing physical improvement, combined with her report to her counselor about her

activities, undermined her testimony about the level and effect of her pain.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (medical evidence is a relevant factor in determining the severity of the pain and its disabling effects); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (unexplained failure to follow a prescribed course of treatment and daily activities are credibility factors).

      The ALJ did not err.

III.    Lay Testimony

      Finally, Keithcart challenges the ALJ's treatment of the statements given by Keithcart's mother, sister, and cousin.  The ALJ found the statements to be a generally credible reflection of Keithcart's abilities "at the time [they were] written," but concluded none of the statements addressed Keithcart's symptoms before the closed period of disability began–April 4, 2006.  The ALJ also found the statements inconsistent with Keithcart's treatment records.  The ALJ did not specifically assess the statements in the context of Keithcart's condition as of February 25, 2010.

      Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout v. Commissioner of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006).  A medical diagnosis, however, is beyond the competence of lay witnesses.  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  A legitimate reason to discount lay testimony is that it conflicts with medical evidence.  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability

determination." Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

Keithcart's mother prepared statements on April 1, 2006, and again on October 12, 2007, noting Keithcart's hand pain, depression, and difficulties lifting, bending, standing and climbing stairs. Her cousin completed a statement on October 24, 2007, describing Keithcart's need to take pain medication, her depression, and her need for back surgery. Finally, her sister completed a function report on August 26, 2008, in which she reported Keithcart would lie in bed, occasionally walk around the yard, and required medication to treat her pain and mental conditions.

I find that, although the ALJ did not specifically address these lay witness statements in the context of the period following the closed period of disability, the error is harmless. First, the ALJ did not completely ignore the statements, but specifically addressed the statements in the context of the time prior to the closed period of disability. Additionally, even fully crediting the statements, I can confidently conclude no reasonable ALJ would have found the statements required a different outcome for the time following the closed period of disability. As the ALJ noted with respect to Keithcart's credibility, and after these statements were written, Keithcart had undergone surgery, she was increasingly active, was tolerating the neck pain well, was walking and tolerating the walking well after undergoing physical therapy on her knee, and was reporting a stable mental condition. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (acceptable to reject spouse's testimony for same reasons given for claimant if spouse's testimony was similar to claimant's complaints).

The ALJ did not err.

Page 15 - OPINION AND ORDER

**CONCLUSION**

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards.  For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this _____30th_____ day of August, 2012.


_____/s/ Garr M. King_____
Garr M. King
United States District Judge

Page 16 - OPINION AND ORDER